

**MURIEL GOODE-TRUFANT**
*Corporation Counsel*

THE CITY OF NEW YORK
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

Plaintiff is directed to file his opposition to this motion, if any, by January 8, 2025. Defendants may file a reply within 10 days of the docketing of Plaintiff's opposition. Each brief is limited to 10 pages. The Clerk of Court is respectfully directed to mail a copy of this endorsement to the pro se Plaintiff.

Dated: December 20, 2024
**SO ORDERED:**

*/s/ Vernon Broderick*
HON. VERNON S. BRODERICK
UNITED STATES DISTRICT JUDGE

**By ECF**
Honorable Vernon S. Broderick
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, New York, New York 10007

   Re: *Westbrook v. City of New York Dep't of Educ., et al.*, No. 23-cv-3164 (VSB)

Dear Judge Broderick:

   I am a Special Assistant Corporation Counsel in the Office of Muriel Goode-Trufant, Corporation Counsel of the City of New York, attorney for defendants the New York City Department of Education ("DOE") and seven current or former DOE principals or assistant principals [1] (collectively the "Defendants") in the above-referenced action for employment discrimination and retaliation under federal, state, and municipal law. Further to Defendants' statement to the Court in the parties' joint letter of November 27, 2024 (ECF No. 70 at 2 (items 1 and 3)), I write to respectfully request a stay of discovery pursuant to Fed. R. Civ. P. 26(c) pending disposition of the motion to dismiss (the "MTD") (ECF No. 27) the Complaint (ECF No. 1).[2] Plaintiff, a teacher and current employee of the DOE who is proceeding pro se, opposes this request.

---

[1] Six of the individual defendants are current or former administrators at the A. Philip Randolph Campus High School ("APRCHS"). David Fanning has been the principal of APRCHS at all times relevant to this action. Kierra Foster-ba, Eunice Garcia, and Libany Malyukov are current assistant principals at APRCHS. Rhonda Pekow and Justine Shewbarran are former assistant principals at APRCHS. Annette Beale has been the principal of The Riverview School at all times relevant to this action; Plaintiff alleges that he taught summer school there in 2021.

[2] Plaintiff commenced this action on April 17, 2023. (ECF No. 1.) The MTD was fully-submitted on October 27, 2023 (ECF No. 39). The Court issued a scheduling order on November 9, 2023. (ECF No. 44.) On December 27, 2023, the parties served initial disclosures; on January 19, 2024, they served discovery notices. Plaintiff's notices are (a) a set of document requests and a set of requests for admission, annexed hereto as **Exhibits A and B**, respectively. On February 26, 2024, the Court issued a stay of discovery pending the outcome of mediation. (ECF No. 52.) On October 17, 2024, the Mediation Office reported that mediation was held but was unsuccessful in resolving any issue. (ECF No. 64.) On December 2, 2024, the Court issued a new scheduling order. (ECF No. 71.)

A stay of discovery is appropriate. Disposition of the MTD very likely will result in dismissal of all causes of action, Alapaha View Ltd. v. Prodigy Network, LLC, 20-CV-7572 (VSB), 2021 U.S. Dist. LEXIS 89789, 2021 WL 1893316, at *4-5 (S.D.N.Y. May 10, 2021) (granting stay where motion to dismiss was potentially dispositive and "appears to be not unfounded in the law"), whether as time-barred, on other procedural grounds, or on the merits. Plaintiff's document requests and requests for admission are so vague, overbroad, unduly burdensome, and generally inappropriate that in the event a stay is not granted, there is no reasonable possibility of avoiding a motion for a protective order. However, disposition of the MTD could avert such a motion, or otherwise narrow the scope of the action, Alapaha, at *6. Furthermore, some or all of the individual defendants could be dismissed; they should not be subjected to the burden of discovery prior to a ruling on the MTD.  At this early stage of the action a short additional stay of discovery cannot prejudice Plaintiff.

**A. Basis for a stay in general**

Although imposition of a stay is not appropriate simply because a motion to dismiss has been filed, CT Espresso LLC v. Lavazza Premium Coffees Corp., No. 22-CV-377 (VSB), 2022 U.S. Dist. LEXIS 93339, 2022 WL 1639485, at *3 (S.D.N.Y. May 24, 2022), a district court may stay discovery for "good cause," Alapaha, 2021 U.S. Dist. LEXIS 89789, 2021 WL 1893316, at * 3. If a motion to dismiss is pending, "courts typically consider several factors in determining whether to stay discovery; including: (1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, (2) the breadth of discovery and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay." Id., quoting Am. Fed'n of Musicians & Employers' Pension Fund v. Atl. Recording Corp., No. 1:15-CV-6267-GHW, 2016 U.S. Dist. LEXIS 66201, 2016 WL 2641122, at *1 (S.D.N.Y. Jan. 8, 2016) (internal quotation marks omitted). When presented with a motion to stay discovery pending disposition of a motion to dismiss, it is useful to consider whether the nature of discovery will be fundamentally different from the discovery that Plaintiff would take if a pending motion to dismiss is granted. CT Espresso, 2022 U.S. Dist. LEXIS 93339, 2022 WL 1639485, at *4.

**B. Basis for a stay when a party seeks to base claims on time-barred events**

At a minimum, there should be a stay pending a ruling as to what alleged events, if any, are timely. The document requests and requests for admission call for responses concerning events which Plaintiff alleges took place far outside the longest limitations period. Kershaw v. N.Y. Life Ins. Co., No. 23-CV-4159 (VSB), 2024 U.S. Dist. LEXIS 151143, 2024 WL 3876398, *1 (S.D.N.Y. Aug. 20, 2024) (motion to dismiss raised legitimate argument that action was time barred); Gross v. Madison Square Garden Ent. Corp., 23-CV-3380 (LAK) (JLC), 2023 U.S. Dist. LEXIS 185775, 2023 WL 6815052, at *4 (S.D.N.Y. Oct. 17, 2023)(stay granted where argument that at least some claims were time-barred was well-founded). The longest limitations period is for the claims against the individuals under 42 U.S.C. § 1983 and the state ("SHRL") and city ("CHRL") human rights laws; that period expired on April 17, 2020. (ECF No. 29 at 22, 24.)  The statute of limitations for the Title VII claims expired on May 8, 2021. (Id., at 8-9).[3] The last alleged

---

[3] The shortest limitations period is for claims against DOE under the SHRL and CHRL; that period ended on April 17, 2022. (ECF No. 29 at 20.)

event in which there was any reference whatsoever to a protected category was on May 13, 2019, almost a year before the most generous statute of limitations period expired, when Plaintiff alleges that a student shouted homophobic epithets at him, and defendant Fanning took no action. (ECF No. 29 at 6, 9.)

C. **Plaintiff's claims are not meritorious**[4,5]

However, and as discussed further in Defendants' MTD, even Plaintiff's claims that are plausibly timely fail on other grounds. The essence of a discrimination claim is an inference of discriminatory animus, but no such inference arises here. Plaintiff has not adequately alleged (a) overt discriminatory comments or conduct within the statutory limitations period, or (b) disparate treatment of a similarly-situated comparator because of a protected characteristic. Plaintiff has also not stated a claim for retaliation since there are no adequate allegations of protected activity or a causal relationship between adverse actions and what Plaintiff characterizes as protected activity.

1. **Title VII claims**

   **(a) Discriminatory employment actions**

Plaintiff's Complaint is devoid of any allegations whatsoever as to a comment or other conduct concerning one of Plaintiff's protected characteristics during the limitations period. Plaintiff, therefore, cannot rely on overt discriminatory comments or conduct to raise an inference of discriminatory animus. He is therefore left with only disparate treatment as a possible basis for raising that inference. In their MTD, Defendants have briefed thoroughly Plaintiff's failure to allege how his purported comparators were similarly-situated to him in all material respects, and therefore he cannot proceed on a disparate treatment theory. (ECF No. 29 at 12-13; ECF No. 39 at 2-3.)

Defendants do not believe that the intervening decision in Muldrow v. City of St. Louis, 601 U.S. 346 (2024) (an adverse employment action under Title VII does not include a materiality standard), changes the outcome of the MTD. In the absence of any allegations sufficient to raise an inference of discriminatory animus, there is no reason to proceed to the analysis as to whether the alleged adverse events constituted a change to "a term or condition of employment" or "some harm respecting an identifiable term or condition of employment." See Mitchell v. Planned Parenthood of Greater N.Y., Inc., 1:23-cv-01932 (JLR), 2024 U.S. Dist. LEXIS 146325, 2024 WL 3849192, at *25 (S.D.N.Y. Aug. 16, 2024). Even if the Muldrow standard were applied to the analysis of Plaintiff's claim, some of the occurrences on which Plaintiff relies cannot be deemed adverse due to his contradictory allegations. For example,

---

[4] Page number citations refer to the page number in the ECF stamp in the header of the file.
[5] Plaintiff has been employed consistently by DOE since 2007. (ECF No. 1 at 15 (¶ 7).) Nonetheless he alleges that the Defendants did not hire him, terminated his employment, and did not promote him. The relief he seeks includes hiring him, re-employing him, and promoting him, in addition to an award of ten million dollars. (Id., at 6.) Plaintiff's ultimate complaint is that Defendants "gaslighted him singularly and in teams –manipulated [him] using psychological methods forcing [him] to question [his] sanity and powers of reasoning proved crippling as an educator" and "ostracizing [him]." (ECF No. 29 at 3.)

Plaintiff relies heavily on the theory that the end of his tenure as dean in 2021 was retaliation by Fanning for reporting to upper level administrators in the DOE alleged misconduct by the administration towards students. (ECF No. 29 at 7, 16-17; see, e.g., ECF Docket No. 1 at 25 (¶ 51): "Principal Fanning demoted me/did not rehire me as dean…in retaliation for reporting to Superintendent Orlen…his insidious actions rooted in bigotry against students….") That theory fails first as a matter of law. Reporting conditions that contribute to a discriminatory hostile work and learning environment for students does not constitute "protected activity" for the purposes of a retaliation claim. (ECF No. 29 at 17); see also Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 134-35 (2nd Cir. 1999) (retaliation for opposing discrimination by employees against non-employees is not cognizable under Title VII); Saliba v. Five Towns College, 991 F. Supp. 2d 449, 451 (E.D.N.Y. 2014) (reporting sexual harassment of a student by a faculty member not cognizable as protected activity).

Second, Plaintiff alleges contradictorily that it was his appointment as dean upon his arrival at APRCHS and Fanning's refusal to let him out of his dean role (ECF Docket No. 1 at 17 (¶ 22), 19 (¶¶ 27, 29), 20 (¶¶ 31-32) that were adverse employment actions. See, e.g., the allegations that Fanning "held me hostage to the dean position because I was a "big Black man," (id., at 19 (¶ 27), and "For eight years, Principal Fanning held me hostage and enslaved me to the dean position…until he saw me as something else…a threat to the stability of his plantation," (id., at 25 (¶ 51)). In essence, Plaintiff is saying that (a) making him a dean was an adverse employment action, as was refusing to let him resign despite his protests, but (b) discontinuing his appointment from dean was retaliatory, i.e., also adverse. (ECF No. 29 n10.) Plaintiff cannot have it both ways. These unambiguous contradictory allegations are incredible in the true sense of the word and cancel each other out, and all allegations about the appointment of Plaintiff to the position of dean and the end of that position should be disregarded.

### (b) The hostile work environment class in not meritorious

Since the last alleged event involving any reference whatsoever to a protected category occurred on May 13, 2019 (ECF No. 29, at 6, 9), there can be no timely hostile work environment claim under any statute (id., at 15). In the absence of any hostile action on the basis of a protected characteristic within the limitations period, the continuing violations doctrine does not save the hostile work environment claims. (ECF 39 at 4, 5, 8.) As a substantive matter, the allegations do not describe a workplace was permeated with "discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." (ECF No. 29 at 13-14.)

### (c) The retaliation claims are not meritorious

Plaintiff uses the term "retaliation" on several occasions to describe various actions by one or more of the Defendants, but it is not clear what he contends were (a) actions he took to oppose employment discrimination, and what were (b) the retaliatory responses to those actions by Defendants. (ECF 29 at 7.) He simply refers generically and inaccurately to conduct by defendants simultaneously as discriminatory and retaliatory. (ECF 29 at 17.) He alleges filing a charge with the EEOC, but the sole consequence that he alleges is a statement by Fanning to other APRCHS staff that they should be careful what they say around him because he is "trying to get a

lawsuit," which isolated him from other staff. (ECF Docket No. 1 at 19 (¶ 78); ECF No. 29 at 17.) He alleges contacting DOE superintendents on multiple occasions, a Deputy Chancellor, and "OSI" (presumably the DOE's Office of Special Investigations) with reports about Fanning's conduct that he alleges was harmful to students or violated rules, and that Defendants took action against him for those communications.[6] But, as discussed, since his communications do not refer to acts he took in opposition to <u>employment discrimination</u> they cannot serve as the basis for a retaliation claim.[7]

### 2. The other discrimination claims against DOE are not meritorious

The claims under 42 U.S.C. § 1981 cannot be maintained against DOE as a matter of law; if construed as 42 U.S.C. § 1983 claims, they fail for lack of "Monell allegations" showing discriminatory conduct resulting from a municipal policy. (ECF No. 29 at 17-18.) The claims under the Age Discrimination in Employment Act (the "ADEA") against DOE fail for lack of allegations supporting an inference of discriminatory animus based on age. (<u>Id</u>., at 18-19.)[8] The state and city claims against DOE fail due to Plaintiff's failure to file a notice of claim,[9] expiration of the statute of limitations, and for the same reasons the claims under Title VII fail. (<u>Id</u>., at 19-21.)

### 3. The claims against the individual defendants are not meritorious

There is no individual liability under Title VII, 42 U.S.C. § 1981, or the ADEA. (ECF No. 29 at 21.) The claims against the individual defendants under 42 U.S.C. § 1983 fail for the same lack of adequate allegations of discriminatory animus as do the claims against DOE. (<u>Id</u>., at 23-24.) In addition to the lack of adequate allegations of discriminatory animus, there can be no individual liability for aiding and abetting discrimination (or retaliation) in the absence of a primary violation of the SHRL or CHRL. (<u>Id</u>., at 24-25.)[10]

---

[6] ECF Docket No. 1 at 21-22 (¶ 39); <u>id</u>., at 24 (¶ 48); <u>id</u>., at 25 (¶ 51); <u>id</u>., at 32 (¶ 91).
[7] ECF Docket No. 1 at 23 (¶¶ 43-44); <u>id</u>., at 27 (¶ 63); <u>id</u>., at 29 (¶ 73); <u>id</u>., at 31 (¶ 81).
[8] Plaintiff alleges that when he complained about Beale switching his summer school class with a more difficult class originally assigned to a younger white female (about whom he provides no other information), an unnamed "coordinator" stated that that he was a "big man" who could handle the more difficult class. He construes that comment as a reference to his age. (ECF No. 39 at 7-8.)
[9] On June 21, 2024, the Supreme Court of New York County dismissed Plaintiff's petition for leave to file a late notice of claim. <u>Westbrook v. New York City Dept. of Educ.</u>, Index No. 100292/23 (Sup. Ct, New York County). <u>See</u> Decision and Order annexed hereto as **Exhibit C**. Plaintiff filed a notice of appeal on July 25, 2024. He has not perfected his appeal; the time for doing so expires on January 24, 2025.
[10] None of the individual defendants should be subjected to the discovery process without a determination as to whether any of Plaintiff's claims are viable, but, without prejudice to the position that all seven should be dismissed from this action, the claims against three in particular are beyond flimsy. The only allegations concerning Foster-Ba within the limitations period are that she told Plaintiff that no one else had to "jump through these kinds of hoops" to organize a school club, and that she approved Plaintiff's timesheets for creating a poetry packet. (ECF No. 29 at 22.) The only references to Garcia within the limitations period are allegations that she did not respond to emails from Plaintiff concerning lack of payment. (<u>Id</u>.) Plaintiff's claim against Beale individually is that, as principal, she switched his summer school teaching assignment, and that she did pay him timely for teaching. (<u>Id</u>., at 23.) The sole basis for imputing discriminatory inference to her is reassignment of a difficult class to Plaintiff from a comparator teacher described only as a younger white female. (<u>Id</u>.)

5

## D. Plaintiff's discovery notices are unduly burdensome

Without a determination of whether Plaintiff has any viable claims and, if so, what factual allegations are relevant to them, there is little prospect for an effective discovery process. Although Plaintiff's position is that he has been subjected to discriminatory abuse from the beginning of his career at DOE in 2003 through commencement of this action in 2023,[11] the Complaint focuses on the last ten years in which Plaintiff has been working at APRCHS. He alleges that DOE administrators at APRCHS "hatefully conspired to harm me emotionally, psychologically, and financially…." (ECF No. 1 at 13-14.) To the extent that there are time limitations in the document requests (each one a "DR"), annexed hereto as **Exhibit A**, many of the DRs specifically call for production of documents going back to 2013, the year in which Plaintiff arrived at APRCHS.[12] There is no apparent basis for seeking information dating so far back, especially considering that all claims arising from events prior to April 17, 2020, are time-barred. DRs 3-6 and 37 call for production of communications with Namita Dwarka, the principal at the school from which Plaintiff transferred to APRCHS in early 2013. (Id., at 15-17 (¶¶ 10-21).)[13] DR 12 calls for information about a purported comparator for Plaintiff with regard to the sexual misconduct charge against him in 2013. (Id., at 17-18 (¶ 23-25), 18 (¶ 26), 105, and 108.) Request 8 calls for production of "[a]ll relevant school videos regarding and related to plaintiff and defendants Fosterba walking down empty hallway to plaintiff's office." Defendants can only speculate that this request relates to Plaintiff's time-barred and substantively-defective claim that Foster-ba harassed him when she instructed him to maintain order in school hallways during his lunch break on February 24, 2020, and March 9, 2020. (Id., at 23 (¶ 43), 24 (¶ 48).) Other DRs seek documents that are irrelevant to any cause of action. See for example (but without limitation) the requests calling for production of documents concerning alleged altercations between Fanning and students, or other alleged misconduct by the School administration towards students.[14]

In addition, the DRs are, with few exceptions, so vague and overbroad that as to be functionally meaningless, for example (but without limitation) DRs 42 ("Plaintiff emails related to absences"), 43 ("Plaintiff's Drs notes submitted"), 55 ("Plaintiff grievance hearing transcripts."), 58 ("Emails related to payment requests or concerns with responses), and 59 ("Emails related to supply requests with responses"). Slightly less than half of the sixty requests are not just vague and/or overbroad but call for the Defendants to produce open-ended categories

---

[11] "From one school to the next, for nearly 20 years, NYC DOE officials deliberately and calculatingly blocked [his] professional growth, career, and financial opportunities." (ECF No. 1 at 13.) Plaintiff alleges "efforts to destroy my mind" through "retaliation, debasement, and gaslighting" (id., at 6), and that Defendants "gaslighted me singularly and in teams – manipulated me using psychological methods forcing me to question my sanity and powers of reasoning proved crippling as an educator…." (id., at 5).
[12] See DRs 27 ("All relevant APRCHS teaching class rosters from 2013-2023"), 35 ("Plaintiff's Regents proctoring schedules 2013-2023"), 49 ("List of special education teachers at APRCHS each year from 2013-2021; APRCHS special education enrollment lists from 2013-2021"), 50 ("Observation reports for teachers observed by Pekow from 2013-2021"), and 53 ("Teachers teaching programs/schedules from 2013-2023").
[13] The Complaint alleges no actions by Dwarka following Plaintiff's transfer from her school to APRCHS.
[14] See DRs 7, 9-10, and 13-15. Presumably Plaintiff seeks documents to support his erroneous theory that his alleged complaints to DOE administrators about poor treatment of students can support a claim of retaliation.

of documents qualified only by the term "relevant." See for example (but without limitation), DRs 3-25, 27. [15]

   While the basic purpose of discovery is to elicit facts and information and to obtain production of documents, requests for admission under Fed. R. Civ. P. 36 are used to relieve the parties of the cost of proving facts that will not be disputed at trial, the truth of which is known to the parties or can be ascertained by reasonable inquiry. Republic of Turkey v. Christie's, 326 F.R.D. 394, 399 (S.D.N.Y. 2018). Rule 36 can be misused. Where requests seek information as to a fundamental disagreement at the heart of the lawsuit, or are unduly burdensome, a court may excuse a party from responding. Id. See also Richard v. Dignean, 332 F.R.D. 450, 462 (W.D.N.Y. 2018) (requests improperly asked defendants to admit that they violated specific policies or certain legal requirements). A defendant cannot be forced to "admit" legal conclusions under Rule 36. Coach, Inc. v. Horizon Trading USA Inc., 908 F. Supp. 2d 426, 432-33 (S.D.N.Y. 2012).

> Rule 36 is…a mechanism for narrowing the issues, and toward that end the requesting party must ensure that the requests are set forth simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without an explanation, and in certain instances, permit a qualification or explanation for purposes of clarification. Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive.

Galgano v. County of Putnam, 16 Civ. 3572 (KMK)(PED), 2021 U.S. Dist. LEXIS 146465, 2021 WL 3159844, *3-4 (S.D.N.Y. Jun. 30, 2021)(granting motion for protective order where plaintiff served four hundred and four requests for admission)(internal citations omitted).

   In light of the pending motion to dismiss and the plainly improper nature of the 536 Requests for Admission ("RFA"),[16] annexed hereto as **Exhibit B**, Defendants should not be required to respond to them. Plaintiff essentially is demanding that Defendants serve an answer to the Complaint; most of the RFAs ask for admissions or denials of Plaintiff's specific factual allegations. Those RFAs and others that call for admissions or denials of conclusions or law are improper. They include (without limitation), RFAs that race, age, sexuality, and/or gender played a role in each individual defendant's treatment of Plaintiff,[17] that Beale engages in favoritism in making summer school assignments,[18] that Fanning engages in favoritism[19] and he "favors White

---

[15] See in particular (but without limitation) DRs 16 ("All relevant hires for special education coordinator and AP of special education"), 19 ("All relevant payments to football staff, including per-session"), 20 ("All relevant employee school observations"), 21 ("All relevant employee evaluations"), 22 ("All relevant employee IPC documents"), 23 ("All relevant teacher grids with schedules, including for lunch"), 24 ("All relevant seniority lists"), and 27 ("All relevant…teaching class rosters from 2013-2023").

[16] Plaintiff addresses forty RFAs to Beale, sixty-one to Foster-ba, eighty to Garcia, one hundred and fifty-three to Fanning, seventy to Malyukov, ninety to Pekow, and forty-two to Shewbarran.

[17] Beale RFAs 21-24, 40; Fanning RFAs 9-12; Foster-ba RFAs 5-8; Garcia RFAs 22-25; Malyukov RFAs 39-42; Pekow RFAs 24-27; Shewbarran RFAs 3-4, 6-7.

[18] Beale RFA 29.

[19] Fanning RFA 129; Foster-ba RFA 53; Garcia RFA 76; Malyukov RFA 70; Pekow RFA 11; Shewbarran RFA 42.

people 100%,"[20] that individual defendants lied in writing or under oath,[21] that individual defendants retaliated against Plaintiff and that Fanning recruited other individual defendants to retaliate against Plaintiff after Plaintiff reported discrimination,[22] that Fanning is trying to force Plaintiff out from APRCHS because Plaintiff reported discrimination,[23] that individual defendants violated law, procedure, or the collective bargaining agreement with the teachers' union,[24] and that Fanning uses his power to harm Plaintiff, is trying to destroy him psychologically, mentally, and financially, and trying to destroy his career because Plaintiff reported discrimination.[25] Multiple RFAs seek admissions concerning incidents which for Plaintiff are central to his theories of discrimination and retaliation and which Defendants have argued are irrelevant as a matter of law. Those RFAs (without limitation) seeks admissions or denials concerning alleged altercations between Fanning and students and allegedly discriminatory school policies towards students,[26] the disciplinary proceeding against Plaintiff in 2013-2014 for sexual misconduct towards two students,[27] Plaintiff's complaint first that Fanning appointed Plaintiff as dean against his will based on race and refused to let Plaintiff step down as dean—and his subsequent complaint that Fanning "demoted" him from the dean position against Plaintiff's will,[28] and Foster-ba directing Plaintiff in his capacity as dean to clear hallways during his lunch period on two occasions prior to the expiration of the longest statute of limitations period.[29]

> To set a discovery schedule and require all of the named defendants, institutional and individual, to participate would…be unreasonable and inappropriate under the circumstances presented here. Several of the defendants are municipal entities who provide public services in the areas of public education…. Compliance with discovery in the posture of this case would result in a substantial diversion of public resources which may not be ultimately necessary in this action. Even in the event that only some of the causes are dismissed - and some but not all of the defendants are dismissed from this action - by staying discovery now it will serve to substantially reduce the economic burden of full party discovery. By waiting until a decision is reached on the pending motion, the areas of discovery may well be substantially reduced, if not eliminated, as to certain named defendants here.

---

[20] Fanning RFA 130.
[21] Fanning RFA 1, 43; Malyukov RFA 11, 37.
[22] Fanning RFAs 13, 131, 133; Foster-ba RFA 39; Garcia RFA 48; Malyukov RFA 35, 64; Pekow RFAs 6, 59; Shewbarran RFAs 18, 33.
[23] Garcia RFA 73; Malyukov RFA 63; Pekow RFA 58.
[24] Beale RFA 39; Fanning RFA 55, 133; Foster-ba RFAs 50-51; Garcia RFAs 79-80; Malyukov RFAs 66-67; Pekow RFAs 66-67, 88; Shewbarran RFAs 11-12.
[25] Foster-ba RFAs 57; Garcia RFAs 70-72; Malyukov RFAs 60-62; Pekow RFAs 55-57; Shewbarran RFA 32.
[26] Fanning RFAs 6-8, 80-84, 88-93; Foster-ba RFAs 10-14, 40, 45, 58, 61; Garcia RFAs 1-2, 16-21, 37-39; Malyukov 31-33, 38; Pekow RFAs 1-2, 4-5, 7-9, 31, 42-46.
[27] Fanning RFAs 42-45, 48-66, 69-70, 76-79, 99, 101-06, 110; Garcia RFAs 32-33, 35, 50-58, 62-65; Pekow RFAs 77-90.
[28] Fanning RFAs 14, 16, 36, 46-47, 85, 107-09, 117, 127; Foster-ba RFAs 42, 48; Garcia RFAs 4, 45-47; Pekow FAs 16, 18-19, 21, 50-51, 73-74, 76.
[29] Fanning RFAs 71-75, 132; Foster-ba RFAs 17-21, 25-31, 43, 54; Garcia RFA 5-6.

Chesney v. Valley Stream Union Free Sch. Dist. No. 24, 236 F.R.D. 113, 116 (E.D.N.Y. 2006). The reasoning of Chesney applies here as well. Defendants respectfully submit that if a stay is not granted pending disposition of the MTD, they fully expect that they will need to move for a protective order as to Plaintiff's discovery requests.

### E. **Plaintiff will not be subjected to prejudice as a result of a stay pending disposition**

This action, which Plaintiff commenced after an alleged twenty-year history of discrimination and retaliation, is still in its early stages. "[A] stay pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue." Spinelli v. Nat'l Football League, No. 13 CIV. 7398 (RWS), 2015 U.S. Dist. LEXIS 155816, 2015 WL 7302266, at *6 (S.D.N.Y. Nov. 17, 2015) (delay in discovery without more does not amount to unfair prejudice). To the contrary, a stay pending disposition of the MTD will ultimately benefit the Plaintiff, who, in the absence of a stay, might pursue seven individual defendants in discovery (incurring, e.g., deposition expenses) only to find out at summary judgment that his claims are not viable; at a minimum, unless Plaintiff agrees to Defendants' conclusions as to which, if any, of his allegations and theories are viable, Defendants will have no choice but to seek a protective order. Even if the MTD is only granted in part, the parties will still benefit by a stay in discovery. Chesney, 236 F.R.D. at 116 ("By waiting until a decision is reached on the pending motion, the areas of discovery may well be substantially reduced, if not eliminated."); Gross, 2023 U.S. Dist. LEXIS 185775, 2023 WL 6815052, at *6 (a stay may yield advantage of simplifying and shortening discovery pending decision on motion "by limiting the scope of the parties' inquiry to claims that have been established as potentially viable"). The MTD has now been fully briefed and any stay would last briefly. Alapaha, 2021 U.S. Dist. LEXIS 89789, 2021 WL 1893316, at *7. A delay will not result in any loss of evidence, nor will it increase difficulties of discovery, and delay alone does not constitute prejudice. Little v. City of N.Y. Dep't of Fin., 20-CV-1979 (RPK)(MMH), 2022 U.S. Dist. LEXIS 154101, 2022 WL 3704214, *9-10 (E.D.N.Y. Aug. 26, 2022).

### F. **Whether the nature and scope of discovery will be different if the MTD is granted**

The answer to the question whether the nature of discovery will be fundamentally different from the discovery that Plaintiff would take if the MTD is granted, CT Espresso, 2022 U.S. Dist. LEXIS 93339, 2022 WL 1639485, at *4, is plainly yes. Defendants have set forth their arguments that the Complaint should be dismissed in its entirety. A basic futility assessment is necessary, i.e., whether any of Plaintiff's causes of action should be dismissed with leave to replead here or dismissed without prejudice to asserting them in state court. At the absolute minimum, a determination as to the applicable statute of limitations could spare Defendants responses to discovery requests and deposition testimony about events between January 1, 2013, and April 2020, e.g., all discovery concerning the disciplinary proceeding against Plaintiff in 2013-2014, and Foster-ba's direction that Plaintiff clear hallways on two occasions in February and March 2020. Defendants will also be relieved of responding to discovery requests and questioning at deposition about, e.g., Plaintiff's complaints about alleged discriminatory conduct towards students. In the absence of any comment whatsoever concerning one of Plaintiff's protected characteristics less than a year before the expiration of the longest limitations period, Plaintiff's hostile work

environment claims should be dismissed with prejudice. If individual defendants are dismissed, e.g., Beale, Foster-ba, and Garcia, they will be spared responding to RFAs and appearing for deposition. The extent of the inevitable motion practice for a protective order likely will be narrower.

**Conclusion**

This action epitomizes the well-known "false syllogism": "(1) I am (insert name of protected class); (2) something bad happened to me at work; (3) therefore, it happened because I am (insert name of protected class)," that does not withstand a motion to dismiss. (ECF No. 39 at 1.) To the extent that Plaintiff has alleged animus, there is no indication of anything more than personal animus that does not support an action for employment discrimination.[30] (ECF No. 29 at 12.)

For the foregoing reasons, a stay of discovery pending disposition of the MTD is appropriate and should be granted. Defendants appreciate the Court's attention and consideration of this request.

Respectfully Submitted,

*s*/Noah Potter
Special Assistant Corporation
Counsel

cc: Alonzo Westbrook, pro se plaintiff
*By USPS (service) and email (courtesy copy)*

---

[30] See for example (but without limitation): ECF No. 1 at 20 (¶ 34); 24 (¶ 49).