UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                        :

ALONZO WESTBROOK,           :

                        :

              Plaintiff,   :

                        :          23-CV-3164 (VSB)

       - against -       :

                        :        **OPINION & ORDER**

CITY OF NEW YORK, *et al.*,    :

                        :

             Defendants.  :

                        :
--------------------------------------------------------X

Appearances:

Alonzo Westbrook
New York, NY
*Pro Se Plaintiff*
*Counsel for Plaintiff*

Noah Potter
New York City Law Department
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      Before me is Defendants' motion to dismiss Plaintiff's complaint for failure to state a

claim upon which relief can be granted.  (Doc. 27.)  For the reasons that follow, Defendants'

motion is GRANTED in part and DENIED in part.

      **I.**        **Factual and Procedural Background**[1]

      Plaintiff Alonzo Westbrook ("Plaintiff or "Westbrook") is a special education teacher in

---

[1] This factual background is derived from the allegations in Plaintiff's complaint.  (Doc. 1 ("Compl." or "Complaint").)  I assume the allegations set forth in the Complaint to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings in this Opinion &

the New York City Department of Education ("NYCDOE").  (Compl. 12.)  Westbrook has been employed by the NYCDOE since 2003, and claims that he has been discriminated against "in forms of race, color, gender, sex, sexual orientation, and age."  (*Id.*)  Consequently, he brings claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C §§ 2000e *et seq.*; 42 U.S.C. § 1981; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623; the New York State Human Rights Law ("NYHRL"), New York Executive Law § 296 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Administrative Code § 8-101 *et seq.*  (*Id.* at 3–4.)  Plaintiff brings suit against the NYCDOE, and David Fanning, Libany Malyukov, Rhonda Pekow, Eunice Garcia, Justine Shewbarran, Annette Beale, and Kierra Foster-Ba (collectively, "Individual Defendants").

Plaintiff is a gay black man who began teaching at Washington Irving High School on September 3, 2003.  (*Id.* ¶¶ 1, 21.)  Since Plaintiff began working for the NYCDOE, he was "forced by [NYC]DOE administrators to be a dean because they view[ed] [him] as a 'big black man.'"  (*Id.* ¶ 1.)  During his tenure in the New York City Public Schools, Plaintiff has been subjected to disparaging comments about his race by supervisors, (*id.* ¶¶ 5–6, 22, 27, 29, 30, 35(a), 39), and he has been stereotyped by administrators because of his sexual orientation, (*id.* ¶¶ 21, 23, 30, 35, 36).  Plaintiff was kept in the dean position and away from teaching full time with students because of his protected characteristics.  (*Id.* ¶¶ 4–10.)  Plaintiff was mistreated by NYCDOE administrators throughout his tenure because of his race and sexual orientation, at first by Principal Dwarka at William Cullen Bryant High School from August 21, 2012 to April 9, 2013, (*id.* ¶¶ 10–21), and then by Defendant Principal David Fanning at A. Philip Randolph

---

Order.  Because the Complaint does not contain consecutive numbering, references to page numbers in the Complaint are to the page numbers given to the Complaint by the ECF system.

Campus High School, (*id.* ¶¶ 22–97), both of whom abused Plaintiff with racial epithets and made stereotypical assumptions about him because of his sexual orientation, (*see id.* ¶¶ 20–23).

In 2014, Defendant Fanning "submitted in writing to the [NYC]DOE a false charge of sexual misconduct," (*id.* ¶¶ 23–25), and treated this charge of sexual misconduct against Plaintiff materially differently because he was a black gay man than they would have done if Plaintiff was white and straight, (*id.* ¶¶ 26–27). In 2018, Defendant Fanning refused to pay Plaintiff for work done as an assistant football coach, (*id.* ¶ 33), and made light of homophobic comments made by students regarding Plaintiff's sexual orientation during this time period, (*id.* ¶¶ 35–36). Further, Plaintiff was kept from certain panels and positions because of his race and sexual orientation between 2018 and 2020. (*Id.* ¶¶ 37–41, 47.) In February and March 2020, Fanning and Defendant Kierra Foster-Ba, an Assistant Principal at the school, collaborated to threaten and humiliate Plaintiff because of his race and sexual orientation, including by making discriminatory comments. (*Id.* ¶¶ 43–48.) In May 2021, and again in November 2021 and March 2022, Plaintiff claims that Defendant Pekow, an Assistant Principal at A. Philip Randolph Campus High School, gave Plaintiff lower evaluations than he merited because of his race and sexual orientation, and participated in the scheme to keep Plaintiff a dean against his wishes, in collaboration with Principal Fanning. (*Id.* ¶¶ 49, 59, 68.)

Defendant Eunice Garcia, Assistant Principal of Organization at A. Philip Randolph Campus High School, discriminated against Plaintiff by failing to pay him for overtime, starting in February 2020. (*Id.* ¶¶ 42, 64, 67.) In June 2021, Defendant Beale "switched [Plaintiff's] teaching program from 8:1:1 remote class instruction to a tougher, more restrictive 6:1:1 in-person class giving [his] 8:1:1 remote class to a full-time female [] teacher." (*Id.* ¶ 50.) In August 2021, Principal Fanning did not rehire Plaintiff as a dean as retaliation "for reporting to

3

[the] Superintendent [] Principal [Fanning's] insidious actions rooted in bigotry against students, including the roughly 300-pound principal fighting an emotionally disturbed Black male student." (*Id.* ¶ 51.) Defendant Beale then repeatedly wrongfully denied Plaintiff payments from the summer of 2021, (*id.* ¶ 52, 62, 64); although Plaintiff ultimately received these payments in February 2023, (*id.* ¶ 86).

Defendant Justine Shewbarran, a special education assistant principal, improperly gave Plaintiff lower evaluations than he merited because of his race and sexual orientation, in November 2021 and thereafter. (*Id.* ¶¶ 59, 61, 68, 72.) Defendant Libany Malyukov, who was appointed "coordinator of special education" by Principal Fanning, discriminated against Plaintiff by also giving him lower evaluations than he merited and contributing to denying him various reimbursements for school expenses. (*Id.* ¶ 75, 76, 81–85, 87, 88, 91–93.)

On March 4, 2022, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), (Compl. 34–36), and received a Notice of Right to Sue from the EEOC signed on January 18, 2023, (Compl. 37–38).

On April 17, 2023, Plaintiff filed his Complaint in the instant matter. (Compl.) On July 24, 2023, Defendants filed a motion to dismiss the complaint, (Doc. 27), accompanied by an affirmation from Noah Potter in support, (Doc. 28), and a memorandum of law, (Doc. 29 ("Mem.")). On September 21, 2023, Plaintiff filed a memorandum of law in opposition. (Doc. 36 ("Opp'n").) On October 27, 2023, Defendants filed their reply brief in support of their motion to dismiss. (Doc. 39 ("Reply").)

## II.    Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237.  "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Although all allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

Pro se complaints are afforded "special solicitude" and must be interpreted to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam) (internal quotation marks omitted).  However, a pro se litigant is "still obligated to comply with the relevant rules of procedural and substantive law." *Doe v. Torres*, No. 05-CV-3388, 2006 WL 290480, at *3 (S.D.N.Y. Feb. 8, 2006).

### III.     Discussion

#### A.     *Title VII Claims Against NYCDOE*

Plaintiff alleges three types of violations of Title VII:  (1) disparate treatment; (2) hostile workplace environment; and (3) retaliation.  Although Plaintiff fails to allege disparate treatment, he plausibly alleges a hostile workplace environment and retaliation in violation of Title VII. The NYCDOE's motion is GRANTED as to Plaintiffs' disparate treatment claim and DENIED as to Plaintiff's claims of hostile workplace environment and retaliation.

"Before a plaintiff can file a Title VII claim, the plaintiff must file an administrative charge of discrimination with the EEOC or an equivalent state agency."  *Roach v. New York City Hous. Auth.*, No. 23-CV-08135, 2025 WL 1769845, at *4 (S.D.N.Y. May 6, 2025), *report and recommendation adopted*, 2025 WL 2430603 (S.D.N.Y. Aug. 22, 2025) (citing *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)).  A "claimant must make the EEOC filing within 300 days of the alleged discriminatory conduct."  *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006).  "This statutory requirement 'operates as a statute of limitations.'" *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 395 n.11 (1982).  Here, Plaintiff filed his EEOC Charge on March 4, 2022, (Compl. 34–36), so the statute bars claims arising before May 8, 2021.  However, for hostile workplace environment claims, "the entire scope of a [] claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002)).

#### 1.  Disparate Treatment

To make out a prima facie case of disparate treatment, "a plaintiff must demonstrate, through direct or circumstantial evidence, that:  (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered from an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination."  *Villar v. City of New York*, 135 F. Supp. 3d 105, 120 (S.D.N.Y. 2015) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).

Each of Plaintiff's allegations of disparate treatment are either:  (1) time-barred; (2) not adverse employment actions as a matter of law; or (3) an adverse employment action that did not occur under circumstances giving rise to an inference of discrimination.  Therefore, Plaintiff's disparate treatment claim against NYCDOE under Title VII fails.

First, all alleged actions taken against Plaintiff prior to May 8, 2021, are time-barred by the statute of limitations.  This means that many of the allegations from the Complaint cannot be considered as predicate discriminatory acts for a disparate treatment claim.  (*See* Compl. ¶¶ 1–48.)  With regard to his disparate treatment claim, Plaintiff does not dispute that acts prior to May 8, 2021 are time barred.

In his opposition brief, Plaintiff claims that "the events alleged to have taken place after May 8, 2021, support a claim for discrimination based on adverse employment action."  (Opp'n 10.)  Specifically, Plaintiff points to "discriminatory observations," "discrimination in class assignment, "demotion for reporting discrimination," "denial of income and career growth," and "failure to pay" in some specific instances as adverse employment actions.  (*Id.* at 11.)

However, most of these alleged acts do not qualify as adverse employment actions.  "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal

7

quotation marks omitted).  "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  *Id.* (internal quotation marks omitted).

"'[N]egative reports or evaluations alone are generally not adverse employment actions.'"  *Royall v. City of Beacon*, No. 24-CV-3, 2024 WL 4266546, at *15 (S.D.N.Y. Sept. 23, 2024) (quoting *Dasrath v. Stony Brook Univ. Med. Ctr.*, No. 12-CV-1484, 2015 WL 1223797, at *11 (E.D.N.Y. Mar. 17, 2015)).[2]  Similarly, "allegations of excessive or unfair work assignments, without more, do not amount to 'adverse employment actions' because they are not materially adverse changes in the terms or conditions of their employment."  *Hubbard v. Port Auth. of New York & New Jersey*, No. 05-CV-4396, 2008 WL 464694, at *11 (S.D.N.Y. Feb. 20, 2008).  Therefore, these actions cannot give rise to a cognizable claim for disparate treatment. To the extent that Plaintiff's disparate treatment claim is premised on such "adverse employment actions," (*see* Compl. ¶¶ 49–50, ("Principal Fanning's unethical and subjective rating system [was] purposefully weaponized to injure me"), 55–56, ("Principal Fanning gave me a one-year self-contained class I did [not] want to teach"), 59, (Defendants "refused to overturn the developing rating"), 61, ("low-functioning students" placed in Plaintiff's class), 63 (alleging a "'bribe 'to teach the self-contained class in exchange for a sixth class"), 68 (Defendants "came unannounced to observe [Plaintiff]"), 72, (Defendant Shewbarran "reduced [Plaintiff's] highly effective" rating "without reason"), 81, (Defendant Malyukov "rated me developing in designing coherent instruction when I am a highly effective teacher")), this claim cannot survive a motion

---

[2] Although negative reports or evaluations "can be considered adverse employment actions when they give rise to material adverse changes in work conditions," no such material changes are alleged here.  *Royall*, 2024 WL 4266546, at *15 (quoting *Dasrath*, 2015 WL 1223797, at *11).

to dismiss.  Further, to the extent that Plaintiff alleges that the fact that he was "demoted" from the dean position was an adverse employment action within the meaning of Title VII, I also cannot find that claim cognizable.  (*See id.* ¶ 51.)  Plaintiff claims that he had wanted to resign from the dean position for nearly a decade, but had been forced to remain in the position for allegedly discriminatory reasons.  (*See id.* ¶ 22, 27, 31.)  As an initial matter, Plaintiff's allegations are inconsistent:  He does not explain how being relieved of a position he did not want and that he was forced to remain in for almost a decade could qualify as an adverse employment action.  In any event, it is black letter law that adverse employment actions must rise above the level of a "mere inconvenience or an alteration of job responsibilities."  *See Littlejohn v. City of New York*, 795 F.3d 297, 312 n.10 (2d Cir. 2015) (internal quotation marks omitted).  Plaintiff fails to plead specific facts showing a material change in his employment responsibilities as a result of being relieved of the dean status.  Therefore, Plaintiff has not met his burden to show that any action taken by Defendants on August 12, 2021 regarding Plaintiff's dean status constituted an adverse employment action.

As Defendants acknowledge, "failure[s] to pay," (*see* Opp'n 11), "could constitute [] adverse employment action[s]."  (Mem. 12.)  However, in order to state a disparate treatment claim, Plaintiff must "plausibly allege 'at least minimal support for the proposition that the employer was motivated by discriminatory intent,'" in taking the adverse employment actions.  *Singh v. Accutime Watch Corp.*, No. 24-CV-8007, 2025 WL 2916135, at *2 (S.D.N.Y. Oct. 14, 2025) (citing *Littlejohn*, 795 F.3d at 311).  "To establish a discriminatory treatment claim under Title VII, proof of discriminatory motive is critical.  Discriminatory motive can be proved by direct or circumstantial evidence."  *Calabritto v. Dillon*, 920 F. Supp. 370, 375 (E.D.N.Y. 1996), *aff'd*, 107 F.3d 2 (2d Cir. 1997).  The kinds of evidence that can support such an inference

9

include "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's" adverse employment actions. *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) (quoting *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)).

Here, the Complaint is bereft of evidence of timely adverse employment actions with a sufficient nexus to Plaintiff's protected characteristics to support an inference of racial discrimination. Plaintiff fails to plead facts raising the plausible inference that his protected characteristics were a motivating factor behind his deferred pay for his summer school expenses or the other out of pocket expenses that he argues either went uncovered by the school or were only reimbursed in a delayed manner. There is simply no direct evidence of discrimination suggesting that the pay delays were connected to Plaintiff's protected status. *See Farmer v. Shake Shack Enters., LLC,* 473 F. Supp. 3d 309, 329 (S.D.N.Y. 2020) (dismissing complaint that was "devoid of concrete allegations from which race discrimination by [Defendants] could be inferred").

Nor is there any "circumstantial evidence, such as evidence of differential treatment afforded to similarly situated" employees, with respect to the timely allegations. *Delia v. Donahoe*, 862 F. Supp. 2d 196, 219–20 (E.D.N.Y. 2012). It is important to note that claims of similarly situated comparators being treated more favorably cannot succeed as a matter of law when the complaint "fails to describe who these people are, what their responsibilities were, how their workplace conduct compared to [Plaintiff's], or how they were treated." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014). In other words, "conclusory

10

allegations," with "no names of individuals who were similarly situated" and "no facts" regarding disparate treatment are not enough. *Harewood v. New York City Dep't of Educ.*, No. 18-CV-05487, 2019 WL 3042486, at *8 (S.D.N.Y. May 8, 2019), *report and recommendation adopted*, No. 18-CV-5487, 2019 WL 2281277 (S.D.N.Y. May 29, 2019). Here, the cursory depictions of "a Latin female math teacher," (see Compl. ¶ 49), or "White female math colleagues," (*see id.* ¶ 93), are plainly insufficient for Plaintiff to meet his burden to demonstrate that a similarly situated comparator was treated differently. *See Mumin v. City of New York*, 760 F. Supp. 3d 28, 52 (S.D.N.Y. 2024) (dismissing complaint that provided "no detail about [comparator] other than her name, gender, and position") (collecting cases)). Plaintiff's Complaint fails to adduce any facts that would suggest otherwise; therefore, Plaintiff has not "'nudged [his] claims across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Plaintiff's disparate treatment claim against NYCDOE, accordingly, is DISMISSED.

### 2. Hostile Workplace Environment

Plaintiff's hostile workplace environment claim against NYCDOE, on the other hand, is assessed under a different legal standard. Because I may consider the totality of the facts alleged against NYCDOE in determining whether Plaintiff's allegations establish that he suffered from a hostile workplace environment, I find that Plaintiff plausibly alleges a claim that he suffered from a hostile workplace environment during his employment at the NYCDOE.

"A hostile work environment claim requires a showing [1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v.*

11

*Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997)). "Claims alleging a hostile work environment require a different analysis than discrimination or retaliation claims because '[t]heir very nature involves repeated conduct.' Unlike discrete discriminatory or retaliatory actions, incidents that give rise to a hostile work environment 'occur[ ] over a series of days or perhaps years and . . . a single act of harassment may not be actionable on its own.'" *Banks*, 81 F.4th at 259–60 (citing *Morgan*, 536 U.S. at 115, 117).

This means that even if Plaintiff failed to allege that the timely individual acts cited in his Complaint support a differential treatment claim, *see supra* § III.A.1, they may still support a hostile work environment claim in connection with "related or "similar" acts that predate the statute of limitations. *See Gordon v. New York City Transit Auth.,* No. 24-CV-3411, 2024 WL 5217932, at *7 (E.D.N.Y. Dec. 26, 2024) (citing *McGullam*, 609 F.3d 78 n. 5).

The Complaint plainly alleges that Defendants made racist remarks against Plaintiff prior to the limitations period. (*See, e.g.*, Compl. ¶¶ 22 ("Principal Fanning regularly referred to me jarringly, openly, and discriminatorily as a 'big black man' and 'big black motherfucker' and I regularly told Principal Fanning his language was offensive"), 29 (Defendant Fanning told Plaintiff: "You help keep the building safe. The kids are afraid of your big ass. They do nearly every god-damn thing you say"), 30 ("Nobody's going to do shit while your big black ass is there I promise"), 35(a) ("I don't need to take the test because I already know I 100% favor White people"), 39 ("Principal Fanning routinely called students 'thugs' and ghetto'")), and perpetuated homophobic stereotypes, (*see id.* ¶¶ 5 ("AP Oliveri began to pejoratively call me, 'Mr. Softee'"), 21 (Principal Dwarka said: "'You are not the man I thought you were,' alluding to my sexuality"), 23 ("It's not my business, but I hear you're gay. If I were you I would use that as my defense."), 30 ("I asked other teachers to do it, but they got kids at home they had to get

12

home to.  You're a single gay guy.  You don't have that problem."), 35 (Principal Fanning

"laughingly informed" Plaintiff of a letter from a parent calling Plaintiff a "sodomite," saying it

was the "funniest shit I've ever read"), 36 (Principal Fanning took no action against student

using homophobic slurs against Plaintiff).)  The Complaint also includes allegations of

differential treatment from 2014, (*id.* ¶¶ 23–26 (alleging that Defendant Fanning treated an

unfounded claim of sexual misconduct against Plaintiff differently because he was a gay black

man than if he were a straight white woman)), and allegations that Defendant Fanning "was out

to get" Plaintiff, (*id.* ¶ 34).

The Supreme Court case *National Railroad Passenger Corporation v. Morgan* is

instructive.  536 U.S. 101 (2022).  In *Morgan* the Court found that "racial jokes," "racially

derogatory acts," "racial epithets," and "negative comments regarding the capacity of blacks to

be supervisors," that occurred before the statute of limitations period were sufficient to create a

hostile workplace environment.  *Id.* at 120–21.  Here, the allegations in the Complaint are

sufficiently similar to those alleged in *Morgan* such that I find, considering all of the conduct as

a whole, Plaintiff plausibly alleges a claim of a hostile workplace environment.

The remaining issue is whether the "incidents and episodes" alleged by Plaintiff that are

within the statute of limitations are so "related" to conduct that are outside that time frame such

that they can be considered "part of the same actionable hostile environment claim."  *McGullam*,

609 F.3d at 77.  In *McGullam*, the court granted summary judgment, finding that the within-

limitations conduct was "insufficiently related" to the hostile workplace claim because it post-

dated a transfer to a different department which was designed to alleviate Plaintiff's alleged

harassment and because the timely conduct "had no relation to the" previous harassment, i.e., it

was not "lewd and teasing" and was not made directly to Plaintiff or in her presence.  609 F.3d

13

77–78.  In contrast, in *Villar*, because Plaintiff alleged that "the same supervisor, in the same department denied her overtime opportunities and degraded her position," the Court found that it could consider untimely conduct in assessing a hostile workplace environment claim.  135 F. Supp. 3d at 132; *see also Grimes-Jenkins v. Consol. Edison Co. of New York, Inc.*, No. 16-CV-4897, 2017 WL 2258374, at *13 (S.D.N.Y. May 22, 2017), *report and recommendation adopted*, No. 16-CV-4897, 2017 WL 2709747 (S.D.N.Y. June 22, 2017) (untimely conduct sufficiently related when it is "the same harassing conduct committed by the same group of supervisors.") Further, consistent with the reduced burden of proof required of plaintiffs at the motion to dismiss stage, at least one court in the Circuit has denied a motion to dismiss hostile workplace environment claims based on "[o]nly two" timely incidents, conducted by a different "protagonist" than the untimely harassment alleged, replete with "very general allegations about the hostile work environment," and where Plaintiffs "[may well] face considerable proof issues with respect to their discrete claims."  *Aslin v. Univ. of Rochester*, No. 17-CV-06847, 2019 WL 4112130, at *13–14 (W.D.N.Y. Aug. 28, 2019).  The Complaint here establishes that Defendant Fanning was the same supervisor allegedly responsible for harassing Plaintiff before and during the limitations period (*compare* Compl. ¶¶ 30, 35, *with id.* ¶¶ 66, 68), which is more than could be said about the defendants in *Aslin*.  The fact that the later in time incidents are not independently actionable as "adverse employment actions" to meet Plaintiff's burden on his differential treatment claim does not mean they are not sufficiently related to Defendant Fanning's earlier-in-time conduct for Plaintiff to make out a cognizable claim for a hostile workplace environment.

For these reasons, Defendants' motion to dismiss Plaintiff's hostile workplace environment claim against NYCDOE is DENIED.

14

### 3. Retaliation

Plaintiff has also met his burden to plausibly allege a retaliation claim under Title VII.

Under Title VII, in order to establish a prima facie case of retaliation a plaintiff must demonstrate the following elements:  "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 315–16.  "Protected activity includes not only the filing of formal charges of discrimination, but also 'informal protests of discrimination, including complaints to management.'" *Trotter v. Nat'l Football League*, 737 F. Supp. 3d 172, 182 (S.D.N.Y. 2024) (quoting *La Grande v. DeCrescente Distrib. Co., Inc.*, 370 F. App'x 206, 212 (2d Cir. 2010)). "A plaintiff need not establish that the conduct she opposed was in fact a violation of Title VII, but must establish that she had a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the la*w*.'" *Barcher v. New York Univ. Sch. of L.*, 993 F. Supp. 177, 185 (S.D.N.Y. 1998), *aff'd*, 172 F.3d 37 (2d Cir. 1999) (quoting *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988)); *cf. id.* ("The determination of whether a good faith, reasonable belief exists is based, in part, on an assessment of the plaintiff's legal sophistication.")

The Second Circuit found that "anti-retaliation protection is broader [than Title VII anti-discrimination protection] and extends beyond workplace-related or employment-related retaliatory acts and harm." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (internal quotation marks omitted.)  "Thus '[t]he scope of actions that may be materially adverse is . . . broader for purposes of retaliation claims than for discrimination claims.'" *McCullough v. John T. Mather Hosp. of Port Jefferson, N.Y., Inc.*, No. 16-CV-4968, 2019 WL 1755436, *9 (E.D.N.Y. Apr. 19,

15

2019) (quoting *Pape v. Dircksen & Talleyrand, Inc.*, No. 16-CV-05377, 2019 WL 1441125, *8 (E.D.N.Y. Mar. 31, 2019)). "'[A] negative performance review can constitute an adverse action for purposes of a retaliation claim.'" *McCullough*, 2019 WL 1755436, at *9 (quoting *Cerni v. J.P. Morgan Secs. LLC*, 208 F. Supp. 3d 533, 539 (S.D.N.Y. 2016)).

Plaintiff alleges that he first began to engage in protected activity under Title VII, at the very latest, by February 2022. (*See* Compl. ¶¶ 63–65.) Plaintiff lodged multiple complaints, both formal and informal, that would have put NYCDOE employees, including administrators, on notice of his grievances and his belief that violations of Title VII were being committed. (*See, e.g., id.* ¶¶ 63–65, 68–69, 73, 78.)

Plaintiff also plausibly alleges "adverse employment action" within the meaning of anti-retaliation law. As explained above, the Second Circuit has held that "anti-retaliation protection is broader [than Title VII anti-discrimination protection] and extends beyond workplace-related or employment-related retaliatory acts and harm." *Hicks*, 593 F.3d at 165 (internal quotation marks omitted.); *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (employment action considered adverse when it "could well dissuade a reasonable worker from making or supporting a charge of discrimination" (internal quotation marks omitted)). Taking the allegations pleaded that postdate February 2022 in aggregate, as I must,[3] I find that the claims that Plaintiff suffered improper negative reviews, (Compl. ¶¶ 68, 72, 81), and that discretionary funds and permissions were arbitrarily withheld from Plaintiff, (Compl. ¶¶ 71, 79, 82), meet Plaintiff's burden of plausibly alleging an adverse employment action due to Plaintiff's protected activity in violation of Title VII at this stage of the litigation. *Compare Collymore v.*

---

[3] "[T]he alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable." *Hicks*, 593 F.3d at 165 (internal quotation marks omitted).

*City of New York*, 767 F. App'x 42, 46 (2d Cir. 2019) (finding that "a reasonable worker in [Plaintiff's] position would decline to report discrimination" when she was forced to work through her lunch break, causing migraines), *with* Compl. ¶ 69 ("The hostile environment was taking a heavy toll on my health and sanity.  I was stressed like never before and having extreme panic attacks.").

At the motion to dismiss stage, the necessary causal connection between the protected activity and the adverse employment action "may be satisfied by allegations that 'each of the adverse actions' defendants took 'occurred against a backdrop of continuing antagonism and frustration of [the plaintiff's] professional ambitions.'" *Collymore*, 767 F. App'x at 46 (quoting *Duplan v. City of New York*, 888 F.3d 612, 626 (2d Cir. 2018)).  Here, Plaintiff's Complaint meets this bar, alleging that Principal Fanning told Plaintiff's colleagues that "Westbrook is trying to get a lawsuit" and to "be careful what you say around him."  (Compl. ¶ 78.)  Plaintiff further claims that he was improperly given negative reviews, actions which were "rooted in retaliation and an effort [] to destroy [Plaintiff's] career and credibility as a teacher," (*id.* ¶ 81), mirroring the standard articulated for causation articulated by the Second Circuit.

Accepting these allegations as true, as I must at this stage of the litigation, *see Kassner*, 496 F.3d at 237 ("[T]he court is to accept as true all facts alleged in the complaint," at the motion to dismiss stage), I find that Plaintiff has pled facts that would give rise to the inference of retaliation against him for his protected activity under Title VII and that his professional ambitions were being frustrated as a result of this retaliation.  Although discovery may well reveal that these actions were not taken at all or that they were not taken in retaliation for Plaintiff's complaints, Plaintiff plausibly alleges a campaign of retaliatory adverse action taken as a result of his speaking out against what he reasonably perceived as a pattern of

discrimination. *See Gostanian v. Bendel,* No. 96-CV-1781, 1997 WL 214966, at *8 (S.D.N.Y. Apr. 25, 1997) ("To establish a *prima facie* case of retaliatory discharge . . . plaintiff need only demonstrate a reasonable good faith belief that defendant's conduct constituted an unlawful employment practice.") (citing *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)).

Defendants' motion to dismiss Plaintiff's retaliation claim against NYCDOE is therefore DENIED.

### B.    *§ 1981 Claim Against NYCDOE*

Defendants correctly point out that "§ 1981 does not provide a separate private right of action against state actors." (Mem. 17 (quoting *Duplan*, 888 F.3d at 621).) However, like in *Duplan*, and because of my obligation to interpret pro se complaints to "raise the strongest arguments that they suggest," *Triestman*, 470 F.3d at 477, I will "construe [pro se Plaintiff's] § 1981 claim[] as brought under § 1983," *Duplan*, 888 F.3d at 621.

However, even so construing, I find that Plaintiff cannot meet his burden under *Monell v. Department of Social Services of City of New York*, to plausibly allege that the there is an "official municipal policy" of discrimination necessary to make out a § 1983 claim against a municipality. 436 U.S. 658, 691 (1978). Plaintiff's suggestion that there could be some sort of exception to *Monell* for Departments of Education, (*see* Opp'n 17), is not supported by the law and I decline to find that such an exception should apply. Therefore, Defendants' motion to dismiss Plaintiff's § 1981 claim, which I construe as a § 1983 claim, against NYCDOE, is hereby GRANTED.

### C.    *Age Discrimination Claim Against NYCDOE*

18

Plaintiff's claim under the ADEA against NYCDOE also must be dismissed.  Plaintiff alleges no facts that suggest that age was the but-for cause for any adverse employment actions taken against him.  (*See* Mem. 18–19.).  One isolated comment that another teacher deserved a break cannot plausibly be connected to Plaintiff's age.  (*See* Compl. ¶ 51.)  Nor does Plaintiff's speculation about a 2017 off-hand comment made by Defendant Fanning about another teacher's age, (*see* Opp'n 18), establish that any adverse employment consequences were taken against Plaintiff because of his age.  Even if it did, the 2017 comment would be untimely and could not support a claim under the ADEA.  *Ford v. Bernard Fineson Development Center*, 81 F.3d 304, 307 (2d Cir. 1996) ("The 300–day limit [] applies" to ADEA claims.).

Defendants' motion to dismiss Plaintiff's ADEA claim against NYCDOE is GRANTED.

### D.    *NYSHRL and NYCHRL Claims Against NYCDOE*

N.Y. Education Law § 3813(1) requires the dismissal of Plaintiff's NYSHRL and NYCHRL claims against NYCDOE.  "Section 3813 requires a plaintiff to file a notice of claim within three months after accrual of the claim and prior to initiating a lawsuit against a school, school district, board of education, or education officer."  *Winbush v. New York City Dep't of Educ.*, No. 23-CV-01320, 2025 WL 2624350, at \*14 (S.D.N.Y. Sept. 10, 2025).  "It is Plaintiff's burden to prove that he filed the requisite notice of claim."  *Barrera v. New York City Dep't of Educ.*, No. 24-CV-7194, 2025 WL 3211802, at \*11 (S.D.N.Y. Nov. 17, 2025).

Plaintiff argues that the dictates of § 3813(1) "may not apply to NYSHRL or NYCHRL claims."  (Opp'n 19.)  This is incorrect.  *See Winbush*, 2025 WL 2624350, at \*14 ("Courts have therefore interpreted the Education Law's notice of claim requirement to apply to claims brought under the NYSHRL"); *Barrera*, 2025 WL 3211802, at \*11–12 (dismissing NYCHRL claims for failure to comply with § 3813(1)).  Because Plaintiff fails to demonstrate that he filed the proper

notices required by § 3813(1), his NYSHRL and NYCHRL claims against NYCDOE are procedurally barred.

Therefore, Defendants' motion to dismiss in regard to Plaintiff's NYSHRL and NYCHRL claims against NYCDOE is GRANTED.

### E.    *Claims Against Individual Defendants.*

#### 1.   Title VII & ADEA

Individual Defendants' motion to dismiss in regard to Plaintiff's Title VII and ADEA claims must be granted because "'Title VII and the ADEA do not impose liability for discrimination on individuals, even supervisors." *Perez v. City of New York*, No. 23-CV-00447, 2024 WL 898943, at *5 (S.D.N.Y. Feb. 29, 2024) (citing *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012)); *see also id.* ("Although it has been suggested that Title VII and the ADEA might permit imposition of liability on individuals who are sued only in their official capacity, the law in this Circuit is to the contrary.").

Accordingly, Defendants' motion to dismiss Plaintiff's Title VII and ADEA claims against the individual defendants is GRANTED.

#### 2.  § 1983

In order to make out a § 1983 claim against the individual Defendants, Plaintiff must show "1) 'the violation of a right secured by the Constitution and laws of the United States,' and (2) 'the alleged deprivation was committed by a person acting under color of state law.'" *Vega*, 801 F.3d at 87–88 (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)). "[O]nce the color of state law requirement is met, except for the issue of individual liability, an 'equal protection claim parallels [a plaintiff's] Title VII claim,'" including retaliation claims, *id.*, (quoting *Feingold*, 366 F.3d at 159), and hostile workplace environment claims, *Matusick v. Erie*

20

*Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) ("A custom or policy of harassment and other discriminatory acts giving rise to hostile work environment claims can form the basis of section 1983 claims."). However, "[a] natural person may be liable under § 1983 only if the official was 'personally involved in the alleged deprivation.'" *Chislett v. New York City Dep't of Educ.*, 157 F.4th 172, 184 (2d Cir. 2025) (quoting *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)). Claims under § 1983 "are subject to a three-year statute of limitations." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 218 (2d Cir. 2004).

Plaintiff's § 1983 disparate treatment claims against the Individual Defendants fail for the same reason as his Title VII disparate treatment claim against NYCDOE. Even though § 1983 is subject to a longer statute of limitations, therefore allowing me to consider facts dating back to April 17, 2020, there are no additional alleged acts of discrimination in the Complaint between April 17, 2020 and May 21, 2021, and therefore my analysis of Plaintiff's § 1983 claims does not materially differ from my analysis of Plaintiff's Title VII claims. (*See* Compl. ¶¶ 48–49.) Thus, Plaintiff's § 1983 disparate treatment claims against the Individual Defendants are time-barred to the extent they are predicated on untimely conduct, and otherwise fail as a matter of law. *See supra* § III.A.1.

In order for an individual to be liable for a hostile workplace environment under § 1983, their conduct, "considered alone," must be "independently sufficient to create a hostile work environment." *Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014). Plaintiff fails to show that any officials aside from Defendant Fanning and Defendant Foster-Ba took any actions against him with a sufficient nexus to his protected characteristics to contribute to a claim of hostile work environment, much less that their actions taken alone constituted a deprivation of his rights. *See Raspardo*, 770 F.3d at 115 ("If a defendant has not *personally* violated a plaintiff's

21

constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant." (emphasis in original)).  However, Defendant Foster-Ba is not alleged to have taken any discriminatory actions at all against Plaintiff within the three-year statute of limitations of the filing of the Complaint, (*see* Opp'n 23; Reply 9), much less actions "sufficiently related" under *Morgan* and its progeny to constitute the same course of conduct.  *See McGullam*, 609 F.3d at 77–78 (finding later in time remarks insufficiently related to previous course of discriminatory conduct).  Therefore, the claims against Defendant Foster-Ba for damages in her individual capacity under § 1983 fail.

With regard to retaliation, the Second Circuit found that "a state employee may bring a retaliation claim under § 1983 against a supervisor who, acting under color of law, retaliates against him for opposing discrimination in the terms of his employment."  *Vega*, 801 F.3d at 82. I find that Plaintiff has plausibly alleged participation in a scheme to, *inter alia*, withhold moneys and reimbursements, (Compl. ¶¶ 67, 71, 79, 83), and procure unmerited negative reviews, (*Id.* ¶¶ 68, 72, 82), following his complaints between February and March of 2022.  (*Id.* ¶¶ 63–65.)  Plaintiffs' allegations extend to Defendants Fanning, (*id.* ¶¶ 64, 68, 72, 81, 83, 88, 91), Shewbarran, (*id.* ¶¶ 68, 72), Malyukov, (*id.* ¶¶ 81, 88, 91), and Beale, (*id.* ¶¶ 70, 82, 86). Defendants correctly point out, however, that there are no allegations that Defendants Garcia and Foster-Ba participated in this scheme.  (Opp'n 22.)  So too with the claims against Defendant Pekow, whose final allegedly discriminatory acts predated any purported protected activity engaged in by Plaintiff.  (*See* Compl. ¶¶ 46, 59.)

Therefore, Defendants' motion to dismiss § 1983 claims for retaliation against Defendants Fanning, Shewbarran, Malyukov, and Beale, and § 1983 claims for hostile workplace environment against Defendant Fanning is DENIED.  With respect to all other § 1983 claims the

motion is GRANTED.

### 3.  NYSHRL and NYCHRL

Although Plaintiff's claims against NYCDOE are procedurally barred by his failure to file a timely notice of claim, *see supra* § III.D, Defendants' assertion that this bar extends to the NYSHRL and NYCHRL claims against the Individual Defendants is incorrect.  *See Johnson v. Cnty. of Nassau*, 82 F. Supp. 3d 533, 537 (E.D.N.Y. 2015) ("NYSHRL claims against multiple individual defendants in their individual capacities could continue . . . despite the dismissal of the NYSHRL claims against the County employer and the individuals in their official capacities for the plaintiff's failure to serve a timely notice of claim.").  Nonetheless, a plaintiff must still prove the predicate liability of the employer under the governing statutes in order to show liability inures to the individual employees under the NYSHRL and NYCHRL.  *Id.* at 537–38 (citing *Jain v. McGraw–Hill Cos., Inc.*, 827 F. Supp. 2d 272, 277 (S.D.N.Y. 2011), *aff'd*, 506 F. App'x. 47 (2d Cir. 2012)).

Defendants substantively address Plaintiff's NYSHRL and NYCHRL claims in their motion to dismiss, arguing that these claims should be dismissed for the same reasons that the Title VII claims were, relying, in particular, on the statute of limitations issue.  (*See* Mem. 20 (citing *Amorosi v. South Colonie Ind. Cent. Sch. Dist.*, 9 N.Y.3d 367, 371–74)).  However, these arguments are largely inapplicable to the individual NYSHRL and NYCHRL claims against the Individual Defendants because, as Defendants acknowledge, NYSHRL and NYCHRL claims against individual defendants are subject to a three-year statute of limitations, rather than a one-year statute of limitations.  (Mem. 24; *see also Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 248–49 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013*)* ("In general, the statute of limitations under the NYSHRL and the NYCHRL is three years."))

Defendants do argue that NYSHRL and NYCHRL claims should be dismissed "for the reasons stated above." (Mem. 20.)  However, as previously explained, I find that Plaintiff has, in fact, met his burden of pleading hostile workplace environment and retaliation claims under Title VII.  *See supra* § III.A.4.  Therefore, Plaintiff's parallel NYSHRL and NYCHRL claims against the Individual Defendants may continue.  Specifically, NYSHRL and NYCHRL claims for retaliation against Defendants Fanning, Shewbarran, Malyukov, and Beale, and NYSHRL and NYCHRL claims for hostile workplace environment against Defendant Fanning may proceed.  Defendants' motion to dismiss is DENIED as to these claims.

Defendants further argue that NYCHRL claims should be dismissed because "Plaintiff has alleged no causal connection between his protected characteristics and the allegedly discriminatory conduct towards him," or "a causal connection between engaging in a protected activity under the statute and adverse action by his employee." (*Id.* at 21.)  However, "the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013) (citing *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 34, 37–39 (1st Dep't 2009)).  "Instead, 'a focus on unequal treatment based on [race]—regardless of whether the conduct is 'tangible' (like hiring or firing) or not—is in fact the approach that is most faithful to the uniquely broad and remedial purposes of the local statute.'" *Id.* (citing *Williams*, 872 N.Y.S.2d at 40)).  Thus, the legal conclusion I drew in § III.A.1, that Plaintiff's treatment by NYCDOE did not amount to an adverse employment action, cannot bar claims under NYCHRL against the Individual Defendants for disparate treatment.  The negative performance reviews and unfair work assignments that failed as a matter of law in the Title VII and § 1983 contexts, *see supra* § III.A.1; III.E.2, do not preclude Plaintiff being able to pursue that conduct here.  Plaintiff may

proceed with his NYCHRL disparate treatment claims against the persons alleged to have engaged in this practice:  Defendants Fanning, Pekow, Shawbarran, and Malyukov.  Defendants' motion to dismiss is DENIED as to NYCHRL disparate treatment claims against Defendants Fanning, Pekow, Shawbarran, and Malyukov.

Defendants also argue that the claims against Defendants Garcia and Foster-Ba under the NYCHRL must be dismissed because they fail to plausibly allege any timely acts of discrimination against Plaintiff within the statute of limitations period.  (*See* Reply 10; Mem. 22.)  Defendants are correct.  The motion of Defendants Garcia and Foster-Ba to dismiss the NYCHRL disparate treatment claims against them is GRANTED.

## IV.    **Conclusion**

For the reasons explained above, Defendant NYCDOE's motion to dismiss is GRANTED as to Plaintiff's claims of disparate treatment under Title VII, ADEA discrimination, and of NYSHRL, NYCHRL, and § 1981 discrimination.  Defendant NYCDOE's motion to dismiss is DENIED as to Plaintiff's claims of a hostile workplace environment and retaliation under Title VII.

Defendant Fanning's Motion to Dismiss is GRANTED as to Plaintiff's Title VII and ADEA claims and as to Plaintiff's § 1983 and NYSHRL disparate treatment claims.  Defendant Fanning's motion to dismiss is DENIED as to Plaintiff's § 1983 and NYSHRL hostile workplace and retaliation claims and as to all NYCHRL claims.

Defendants Shewbarran's motions to dismiss is GRANTED as to Plaintiff's Title VII and ADEA claims and as to Plaintiff's § 1983 and NYSHRL disparate treatment and hostile workplace claims, as well as his NYCHRL hostile workplace claims.  Defendant Shewbarran's motion to dismiss is DENIED as to Plaintiff's § 1983, NYSHRL, and NYCHRL retaliation

claims and his NYCHRL disparate treatment claims.

Defendants Malyukov's motions to dismiss is GRANTED as to Plaintiff's Title VII and ADEA claims and as to Plaintiff's § 1983 and NYSHRL disparate treatment and hostile workplace claims, as well his NYCHRL hostile workplace claims.  Defendant Malyukov's motion to dismiss is DENIED as to Plaintiff's § 1983, NYSHRL, and NYCHRL retaliation claims and his NYCHRL disparate treatment claims.

Defendant Beale's motion to dismiss is GRANTED as to Plaintiff's Title VII and ADEA claims and as to Plaintiff's § 1983, NYCHRL, and NYSHRL disparate treatment and hostile workplace claims.  Defendant Beale's motion to dismiss is DENIED as to Plaintiff's § 1983, NYCHRL, and NYSHRL retaliation claims.

Defendant Pekow's motion to dismiss is GRANTED as to Plaintiff's Title VII and ADEA claims, as to Plaintiff's § 1983 and NYSHRL disparate treatment, hostile workplace, and retaliation claims, and as to Plaintiff's NYCHRL disparate treatment and hostile workplace claims.  Defendant Pekow's motion to dismiss is DENIED as to Plaintiff's NYCHRL disparate treatment claim.

Defendant Garcia's motion to dismiss is GRANTED as to all claims.

Defendant Foster-Ba's motion to dismiss is GRANTED as to all claims.

SO ORDERED.

Dated:        March 23, 2026
              New York, New York

_____
Vernon S. Broderick
United States District Judge

26